### The State *v.* Thomas P. Heas.

The doctrine that the malice aforethought must be specially charged in the conclusion of an indict-
ment for murder, has been well settled in the Common Law of England, and has been adopted in the
criminal jurisprudence of this State by the Act of the Territorial Legislature, in 1805.

The words "of his malice aforethought," in the conclusion of an indictment; for murder, is not an
"unnecessary prolixity" of the Common Law, referred to in the Act of May 4th, 1805, Sec. 33, and
this though the words "feloniously, wilfully, and of his malice aforethought," are thrice repeated
in the body of the bill of indictment.

The verdict must be responsive to the charge, or else the judgment will be reversed.

Where the indictment was technically defective as an indictment for murder, in consequence of
which the judgment was arrested; yet, where the verdict of the jury clearly indicated that the
jurors believed the prisoner guilty of murder, the Supreme Court ordered him to be detained in close
custody until the next session of the grand jury for the parish, in which he had been tried.

APPEAL from the District Court of the Parish of Lafourche, *Cole*, J.
*Roman*, District Attorney, for the State.

*J. O. & A. Beatty*, for defendant and appellant, cited: Chitty, 1, 243, note
W. 3, 750; edition of 1841, Vol. 2, p. 4; Vol. 3, p. 750; East.'s P. C. 1, 345,
§116; Archbold's Criminal Pleading, 381, edition of 1840; Russell on Crimes,
edition of 1831, 469—original edition, 470; Hale's P. C., 1, 449 and 466; 2,
184, edition of 1800.

Spofford, J. Thomas P. Heas was indicted for the murder of Henry Boyd.

The Jury found the following verdict: "Coupable avec préméditation sans
application de la peine de mort."

The prisoner moved for a new trial and in arrest of judgment, but both mo-
tions were overruled.   Having, thereupon, been sentenced to hard labor in
the penitentiary for life, he took this appeal.

The principal error relied upon to procure an arrest of judgment, consists in
an omission, in the conclusion to the bill of indictment, of the formal clause "of
his malice aforethought." The conclusion is as follows: "And so the grand
jurors aforesaid, upon their oath aforesaid, do say that the said Thomas P. Heas.
him the said Henry Boyd, in the manner and form and by the means aforesaid,
did kill and murder, contrary to the form of the statute of the State of Louis-
iana in such case made and provided, and against the peace and dignity of the
same."

It is true, the words "feloniously, wilfully, and of his malice aforethought,"
are thrice repeated in the body of the bill, in charging the assault, the discharge
of the loaded gun, and the wounding of Henry Boyd.   But by the common law
of England, as it stood in the year 1805, the repetition in the body of the bill
could not cure an omission of the same material phrase in the conclusion.   Nor
can the words "in the manner and form aforesaid" be intended to include the
'malice aforethought."

"Though *murdravit* be in the indictment, yet, if it wants the words *ex mali-
tiâ suâ præcogitulá*, the party shall have his clergy." 2 Hale's Plea. Crown,
187.

"As a conclusion from the facts averred, it must be stated that so the de-
fendant, feloniously, of his malice aforethought, did kill and murder the de-

ceased ; for, without the terms 'malice aforethought' and the artificial phrase 'murder,' the indictment will be taken to charge manslaughter only." 1 Chit. Cr. Law, 243.

In *The Commonwealth* v. *Gibson*, 2 Virginia Cases, 74, the Court said : " In indictments for murder it is necessary to aver that the person indicted, ' of his malice aforethought,' killed and murdered the deceased ; that these words ' malice aforethought' cannot be supplied by others whose import may be the same; that, although it is averred in this case that he did 'feloniously, wilfully, and of his malice aforethought,' give the mortal wound,—and although, in the conclusion, the indictment does aver that he, 'in manner and form aforesaid, feloniously, wilfully and maliciously did kill and murder,' &c. ; yet as the words ' of malice aforethought' are not used in that conclusion, the indictment in this case cannot be supported as an indictment for murder." 2 Virginia Cases, 74.

See also, *Anderson* v. *The State*, 5 Pike, 445, where many authorities upon this subject are cited, and where the words " of malice aforethought," in the conclusion, were held unnecessary, Ringo, C. J, *dissentiente ;* but the opinion of the majority was based entirely upon statuary provisions peculiar to the law of Arkansas.

See also, *Respublica* v. *Honeyman*, 2 Dallas, 228.

The authorities cited on behalf of the prisoner have not been met in the elaborate argument of the District Attorney, save by the same course of rea- soning which was overruled in the case of *The Commonwealth* v. *Gibson*, and by some detached expressions and abbreviated forms from Hale, Chitty, and Starkie.

The doctrine that the malice aforethought must be specially charged in the conclusion of an indictment for murder, we consider to have been well settled in the Common Law of England, and to have been adopted into our criminal jurisprudence by the Act of the Territorial Legislature in 1805.

No subsequent statute has changed the law in this respect.

We have been urged by the Attorney General to take the responsibility of declaring the repetition of this technical phrase in the conclusion of an indict- ment for murder, to be an " unnecessary prolixity," of which the form of the indictment may be divested by virtue of the Act of May 4th, 1805, §33.

The Supreme Court of the Territory of Orleans, as early as 1810, were asked by the then Attorney General to assume a similar responsibility under this statute. But they declared that what wise judges in England had held to be essential averments, must be held so here ; that some standard must be given for Courts to be governed by besides human reason that is as various as the physical and mental capacities of men ; and the language of a celebrated Brit- ish jurist was quoted as signally applicable here : " The freedom of our Consti- tution will not permit that, in criminal cases, a power should be lodged in any judge to construe the law otherwise than according to the letter."

*Territory* v. *Nugent.* 1 Martin, 117, 173.

Again, in *The State* v. *Kennedy*, 8 Rob. 601, the same argument was ad- dressed to the Court of Errors and Appeals. Their response was : " We do not believe that the Legislature intended to confer upon Courts authority to legislate upon the subject of criminal proceedings or the findings of indictments; but merely to direct prosecuting officers to omit those prolixities which were acknowledged to be such at Common Law, and therefore unnecessary, although habitually inserted in indictments, such as the averment that the defendant, " not having the fear of God before his eyes," &c.

This has become the settled construction of the Statute of 1805. Were it not so, we should hesitate to exercise a power which, under the true theory of our Government, the legislative branch is, perhaps, incompetent to delegate to the judiciary.

It is better that a murderer should escape the legal penalty of his guilt, than that this tribunal should usurp an authority withheld from it by the Constitution. Guided by that instrument, it is our sole duty and desire to administer the law as it is; to others belong the arduous task of making it what it ought to be.

The judgment must be arrested; but we cannot order the prisoner to be discharged, as we are asked by his counsel to do. The verdict of the jury, " Guilty with premeditation," renders it impossible for us to conclude that he has been convicted of manslaughter, as we might perhaps have done if there had been simply a general verdict of " Guilty ;" neither has he been acquitted of manslaughter; upon that issue the jury have never passed, although it may be conceded, that the indictment would be valid as an indictment for that offence.

Considering the charge as one of murder, the judgment must be arrested for want of a formal conclusion to the indictment: considering it as a charge of manslaughter, the judgment must be arrested for want of a verdict responsive to the issue.

As to the emphatic verdict of the jury, although upon an indictment technically insufficient, affords the strongest presumption that the prisoner is guilty of the murder of *Henry Boyd*, and as, in legal contemplation, he has not yet been in jeopardy of life or limb on that account, it becomes our duty, as conservators of the peace of the State, to guard against his escape from justice, so far as it is possible for us to do so.

It is therefore ordered, that the judgment of the District Court be annulled, avoided and reversed. It is further ordered, that judgment against *Thomas P. Heas*, upon the bill of indictment preferred against him by the Grand Jury of the Parish of Lafourche, on the 2d day of October, 1854, (a copy whereof is found in the record of this cause,) be arrested; but that the prisoner be detained in close custody until the next session of the Grand Jury within and for the Parish of Lafourche, then and there to answer to a new bill of indictment to be preferred against him for the murder of *Henry Boyd*, and to abide the orders of the District Court of the Parish of Lafourche thereupon.